Ralph O. Bloemers (OSB No. 984172)
Courtney Johnson (OSB No. 077221)
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205
Tel. (503) 525.2727
ralph@crag.org
courtney@crag.org

David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439
davebahr@mindspring.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## MEDFORD DIVISION

| | |
|---|---|
| **ROGUE RIVERKEEPER, A PROJECT OF THE KLAMATH SISKIYOU WILDLANDS CENTER**, an Oregon non-profit corporation,<br><br>　　　　　Plaintiff,<br>　v.<br><br>**DONALD BEAN**, individually,<br><br>　　　　　Defendant. | No. 1:11-cv-3013-CL<br><br>**DECLARATION OF DAVID BAHR IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS FEES, COSTS AND EXPENSES** |

I, David Bahr, do hereby declare under penalty of perjury:

### COUNSEL'S LEGAL EXPERIENCE

**1.** I am an attorney licensed to practice law in Oregon (admitted in 1990), the United States District Court for Oregon (admitted in 1992) and the United States Ninth and Tenth Circuit Courts of Appeal (admitted in 1994 and 2009, respectively). I remain a member in good standing of all four bars. I have also been admitted *pro hac vice* to litigate cases in federal or state

proceedings in Alaska, California, the District of Columbia, Hawaii, Idaho, Montana, New Mexico, Washington and Wyoming.

2. I have been actively involved in public interest litigation since I joined the Oregon State Bar. From 1994 to 2002, I was a partner and shareholder in the firm of Bahr & Stotter Law Offices, P.C., located in Eugene, Oregon. Beginning in 2002, I was a shareholder in the firm of David Bahr & Associates, P.C. In 2003, I joined the staff of the Western Environmental Law Center ("WELC") as a senior attorney in the Northwest Office in Eugene, Oregon. At the beginning of 2010, I left WELC and established Bahr Law Offices, P.C., a law firm with a focus on public records and natural resource litigation.

3. My practice is litigation based and I have extensive experience in federal and state environmental, public lands, public records, land use, special education and civil rights litigation. I have litigated both state and federal matters throughout the states of Oregon, Washington and Wyoming and have also litigated federal civil actions throughout the Pacific Northwest, the West Coast, the Southwest and the District of Columbia as well as federal appellate matters in the United States Ninth and Tenth Circuit Courts of Appeal. It is my understanding that I enjoy a sound reputation throughout these regions for having demonstrated effective trial and appellate litigation skills and abilities. I have successfully represented a multitude of clients in a wide variety of matters, although public records, environmental, public lands, land use, civil rights and special education law have comprised the primary focus.

4. During my second year of law school, beginning in 1988, I worked in the law offices of C. Peter Sorenson. I worked there continuously through the rest of my law school years, performing all manner of work on a caseload devoted almost exclusively to federal environmental and public records litigation. I also completed a nine-month internship with the Lane County

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

2

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

Public Defender's Office, September 1989 to May 1990, where I represented indigent criminal defendants in Lane County District Court. Further, during my third year of law school, I drafted the brief and presented the oral argument before the Oregon Court of Appeals in *Iron Horse Stage Lines, Inc., v. Willamette Pass Ski Corp.*, 100 Or.App. 261 (1990). I graduated from the University of Oregon School of Law in 1990. While in law school, I earned a certificate of completion in Environmental and Natural Resources Law.

**5.** In 1993, I was asked to join the litigation effort in the matter of *In Re Hanford Nuclear Reservation Litigation*, CY-91-3015-AAM (E.D. Wash), where I expended the better part of a year personally directing Plaintiffs' on-site discovery operations in Richland, Washington. That project involved supervising a crew of up to ten attorneys and paralegals in the review and analysis of approximately 18 million pages of archival materials as the foundation of document production efforts in a highly complex federal class action. This unique experience provided me with invaluable and direct exposure and training in the actual practice, tactics and strategy involved in major and complex federal litigation in a manner and to an extent beyond what one would normally expect for an attorney who was then less than three years removed from law school.

**6.** Since 1990, I have presented numerous seminars, workshops and Continuing Legal Education (CLE) programs in conjunction with Lewis & Clark Law School, University of Oregon Law School, King County (Washington) Bar Association, Lane County (Oregon) Bar Association, and other professional and community groups regarding litigation in state and federal courts. The subjects of these presentations included: public records, civil procedure, motions practice, discovery, ethics, the Freedom of Information Act (and various state analogues), the National Forest Management Act, the Federal Land Policy and Management Act, the Endangered

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

3

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

Species Act, the Clean Water Act, the National Environmental Policy Act, the Wilderness Act, the Administrative Procedure Act and the federal Quiet Title Act. Additionally, from 2003 to 2009, I was a lecturer/student supervisor for the Environmental Law Clinic of the University of Oregon School of Law.

7. I have successfully litigated as lead and associate counsel and participated as a consulting attorney in a number of cases against, or relating to, state and federal agencies. Representative cases include: *The Wilderness Society et al v. United States Forest Service et al*, 4:08-cv-00363-EJL (D. Id. 2008 (pending)) (Co-counsel in challenge to the Sawtooth National Forest's travel management as violating NFMA, NEPA, the federal Clean Water Act (CWA), and Executive Order 11644. The trial court issued a decision partially granting summary judgment for plaintiffs on the NEPA claim and withholding ruling on the CWA and Executive Order issues pending completion of further NEPA review by the Agency.); *Sierra Club et al v. United States Environmental Protection Agency*, 3:11-cv-00846-MEJ (N.D. Cal. 2011 (pending)) (Lead counsel in FOIA suit against EPA for unlawful withholding of information relating to dangers and environmental impacts associated with coal burning power plants in Texas that has resulted in release of 40,000 pages of records sought pursuant to partial settlement agreement with more to be subsequently released); *National Wildlife Federation v. United States Federal Emergency Management Agency*, 2:11-cv-00512-JLR (W.D. Wash. 2011 (pending)) (Lead counsel in FOIA suit against FEMA seeking release of information relating to flood insurance and flood plane management that has resulted in release of 12,000 pages of records sought pursuant to settlement agreement with more to be subsequently released); *Audubon Soc. of Portland v. U.S. Nat'l Res. Conservation Serv.*, 841 F. Supp. 2d 1182 (D. Or. 2012) (Lead counsel in FOIA case of first impression interpreting a provision of the Farm Bill of 2008. The NRCS had refused to release

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

4

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

information regarding the northern spotted owl Safe Harbor Agreement between the U.S. Fish and Wildlife Service, the Oregon Department of Forestry, and NRCS by claiming that it was "agricultural" in nature and thus exempt from release under a provision of the Farm Bill of 2008); *Pacific Rivers Council et al v. Shepard et al*, 3:09-cv-00058-ST (D. Or. 2009) (Initial lead counsel in case challenging Western Oregon Plan Revision (WOPR) to the recovery plan for the northern spotted owl on Bureau of Land Management lands in Oregon as being in violation of NEPA and ESA. The case was resolved via settlement after the Secretary of Interior publicly admitted that the WOPR was "legally indefensible."); *Heart of Am. Nw. Research Cntr. v. Energy Northwest*; Benton Cty. (Wash) Superior Court No. 11-2-00585-0 (2012) (Lead counsel in Washington Public Records Act case alleging unlawful withholding by Energy Northwest of records relating to production and use of plutonium oxide as reactor fuel that resulted release of the subject records pursuant to negotiated settlement); *Hawley v. United States Department of Commerce, et al*; 3:10-cv-00140-KI (D. Or 2010) (Represented journalist in FOIA suit seeking release of non-exempt information unlawfully withheld by US Dept. of Commerce and US Council on Environmental Quality that caused release of all records sought pursuant to settlement agreement.); *American Lands Alliance et al v. Norton et al*, Case 1:04-cv-00434-RBW (D.D.C. 2007) (associated on case challenging a "warranted but precluded" listing decision pertaining to the Gunnison sage-grouse under the federal ESA); *Wildlands CPR v. U.S. Forest Serv.*, 558 F. Supp. 2d 1096 (D. Mont. 2008) (Lead counsel in challenge to USFS' refusal to grant fee waiver requested which resulted in the granting of the waiver and release of travel planning and motorized use impact information from 84 national forests. The case further produced a reported decision holding that the 2007 amendments to FOIA's attorney fee provision may be retroactively applied.); *Alleman, et al. v. USA, et al.*, 372 F.Supp.2d 1212 (D. Or. 2005) (directed intervenor

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

5

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

defense of action in which the plaintiff invoked the federal Quiet Title Act (QTA), the Administrative Procedure Act (APA) and various common-law easement theories in an effort to allow unlimited motor vehicle access into the heart of the Kalmiopsis Wilderness Area of the Siskiyou National Forest); *American Lands Alliance, et al. v. United States Bureau of Land Management et al. and Western Gas Resources, et al.,* Civil No. 03-71-BLG-RWA (D. Montana, 2005) (directed litigation team in asserting that BLM violated its duties under the NEPA relating to coalbed methane leasing decisions in the Powder River Basin area of Montana); *Loebach v. Oregon Student Public Interest Research Group*, 200 Or.App. 100 (2005) (directed defense of employment law matter in which plaintiff asserted novel interpretation of minimum wage and overtime statutes); *Okanagan Highlands Alliance v. State of Washington, Department of Ecology*, PCHB 04-064 (Washington Pollution Control Hearings Board, 2005) (directed administrative challenge to permit issued to mining facility under the Clean Water Act (CWA) which resulted in negotiated resolution limiting discharge parameters previously allowed and shortening compliance schedule); *Center For Biological Diversity et al. v. Gail Norton*, Civil No. 03-CV-1111-AA (D. Or. 2005) (associated on ESA litigation in which court found unlawful the use of generic Candidate Notice Of Review (CNOR) in lieu of issuing specific findings responsive to petitions to list species under the ESA); *In Defense of Animals v. Oregon Health Sciences University*, 199 Or.App. 160 (2005) (directed action under the Oregon Public Records Act which established parameters by which state agencies are to evaluate requests for fee waivers related to information requests); *Siskiyou Regional Education Project v. U.S.F.S.,* Civil No. 98-3094-CO (D. Or. 2004) (directed NEPA litigation challenging issuance of special use permit allowing motorized access into the Kalmiopsis Wilderness Area of the Siskiyou National Forest which resulted in negotiated resolution ratifying withdrawal of permit and condition that any

reapplication would require fresh NEPA review); *Electors Concerned About Animas Water, et al. v. Office of Management and Budget*, Civil No. 01-1260 M/WWD (D. New Mexico, 2002) (directed Freedom of Information Act (FOIA) case which resulted in the OMB's disclosure of a body of documents relating to the renegotiation of the settlement of claims regarding water rights of the Colorado Ute Indian tribes which it had been withholding from public review); *Hells Canyon Preservation Council v. United States Forest Service*; Case No. 99-1577-HU (D. Or. 2001) (directed FOIA action mandating Forest Service disclosure of information and documents pertaining to the John Day/Snake Resource Advisory Council); *Western Land Exchange Project v. U.S.F.S.,* Case No. 99-1650-Z (W.D. Wa. 2000) (directed FOIA action which for the first time required the Forest Service to publicly disclose real estate appraisal data related to public/private land exchanges which had been previously withheld as a matter of policy); *Wilbur Residents for a Clean Neighborhood, et al. v. Department of Environmental Quality, et al,* Case No. 98-CV0649CC (Douglas County Cir. Ct. 2000) (directed case invoking the Oregon Administrative Procedure Act (ORAPA) to establish the precedent that State agencies must issue factual findings in support of permit issuance determinations in "other than contested cases"); *Northwest Ecosystem Alliance v. U.S.F.S.*, Case No. C96-0451R (W.D. Wa. 2000) (directed case of first impression interpreting Section 8(b) of NFMA in which defendant was required to inventory, close and re-vegetate "non-system" roads within the Okanogan National Forest); *Western Land Exchange Project v. U.S.F.S.,* Case No. 99-1650-Z (W.D. Wa. 2000) (directed FOIA action which for the first time required the Forest Service to publicly disclose real estate appraisal data related to public/private land exchanges which had been previously withheld as a matter of policy); *Pacific Environmental Resources Center v. Overseas Private Investment Corp.*, Case No. C-96-4241-CRB (N.D. Cal. 1999) (Directed FOIA action which for the first time required OPIC to

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

7

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

publicly disclose its contracts of insurance and other documents previously withheld as a matter of policy); *Klamath-Siskiyou Wildlife Center, et al v. Babbitt*, Civ. No. 99-1044-ST (D. Or. 1999) (and consolidated case CV 99-1213-ST) (consulted in support of Plaintiff's attorney fee petition in an ESA listing case); *Friends of the Coast Fork v. U.S. Dept. of the Interior*, 110 F.3d 53 (9th. Cir 1997) (directed FOIA action establishing in this Circuit both an agency's duty to apply multi-factorial test to evaluate fee-waiver requests and prohibiting agency use of post hoc rationales not raised at the administrative level); *Siskiyou Regional Education Project, et al. v. U.S.F.S.,* Civ. No. 94-3084-CO (D. Or. 1996); (associated on action reversing agency's application of categorical exclusions under NEPA); *Kahn v. Canfield et al*, Civ. No. 16-95-06314 (Lane County Cir. Ct. 1996) (associated on complex real estate fraud and racketeering case); *Save Our ecoSystems (SOS), et al v. FHA*, Civ. No. 96-6161-HO (D. Or. 1996), (directed NEPA action charging agency's failure to draft Supplemental Environmental Impact Statement (SEIS) and unlawful segmentation of highway project); *A.T. v. Salem-Keizer School District*, Civ. No.95-6435-TC (D. Or. 1996) (directed action filed under the Individuals with Disabilities Education Act (IDEA) alleging school's failure to provide appropriate educational plan for disabled student); *Save Our Ozone v. EPA*, Civ. No. 94-6455-HO (D. Or. 1995) (directed FOIA action alleging EPA's failure to timely comply with public record request); *Nelson v. Reilly*, Civ. No. 92-6260-HO (D. Or. 1992) (directed case alleging EPA's failure to promulgate air pollution testing protocols for light trucks in a timely manner); and *Miller et al v. Reilly et al*, Civ. No. 91-6357-JO (D. Or. 1991) (directed FOIA action alleging EPA's failure to timely comply with public record request).

**8.** My expertise in representing public interest clients against federal agencies was recognized when I was invited to provide my opinions regarding the implementation of the 2007

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

8

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

OPEN Government Amendments to the FOIA by the U.S. *House* of Representatives, Committee On *Oversight* and Government *Reform* Information Policy, Census and National Archives Subcommittee. Unfortunately, a scheduling conflict prevented my participation in the hearing on March 18, 2010. In May 2010, I was also invited to, and did, provide testimony to Oregon Attorney General John Kroger's Transparency Initiative regarding means to improve the Oregon Public Records Act.

9. I was honored to have been awarded the Kerry L. Rydberg Award for accomplishments in public interest litigation by the 1999 Public Interest Law Conference at the University of Oregon Law School. I was also a recipient of the 2001 Sunshine Award issued by the Society of Professional Journalists. The Award is presented to individuals that the Society determines have made "a significant contribution to public understanding and education about laws governing open records and meetings [and to] recognize outstanding efforts in advocacy under the Freedom of Information Act (FOIA) and state public records laws and personal courage in working to keep public information publicly available." I am one of two principals in FOIAdvocates (http://www.foiadvocates.com), a twelve year-old project intended to foster greater public access to information possessed by state and federal governments.

## ATTORNEYS' FEES IN THIS CASE: HOURLY RATES

10. I am familiar with the billing rates in use in the forums in which I try cases. My firm's practice frequently entails representation under the various "fee shifting" provisions of state and federal environmental law. Because I litigate cases throughout the Pacific Northwest, the West Coast, the Southwest and Washington D.C, I periodically conduct reviews of the billing rates of a representative number of firms in our region. I am also engaged in an ongoing dialogue

with public interest environmental attorneys throughout the country regarding the rates they seek and recover. This ongoing review process encompasses various legal markets in which I practice in order to best substantiate my requests for compensation.

11. In order to best determine reasonable and appropriate hourly rates in this case, in addition to the data described immediately above, I have conferred with a number of attorneys familiar with billing practices in the Oregon legal community.

12. I maintain computerized accounting, cost tracking and billing systems that allow me to specifically identify and charge special overhead items to individual clients rather than disperse the amounts into general operational overhead. The recovery of these special overhead items is made by direct billing of the client, and not by an addition to hourly rates. By attributing these specific expenditure items to an individual client, I am able to keep hourly rates less than would otherwise be in this case to cover this type of overhead. Consequently, the billing is a more accurate reflection of the costs and legal services actually provided to a particular client.

13. Plaintiff reasonably anticipated that this litigation would require the skill of experienced counsel due to the nature of the subject matter involved. As described above, Counsel for Plaintiff has significant specialized expertise and skill sets regarding federal environmental litigation that Plaintiff reasonably anticipated would prove necessary to the successful litigation of this case. The fact that Defendant insisted on representing himself and defaulted rather than litigating the merits of the Plaintiff's claims does not diminish the reasonable expectation that Counsels' specialized litigation expertise would be necessary in this case. The hourly rates requested in this case reflect this conclusion.

14. As an initial matter, I am familiar with, and have reviewed, the August 2012 Economic Survey prepared by the Oregon State Bar (hereafter the "OSB Survey"). Available for

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS    10    BAHR LAW OFFICES, P.C.
FEES, COSTS AND EXPENSES                                    1035 ½ Monroe Street
                                                            Eugene, OR  97402
                                                            (541) 556-6439

downloading from: http://www.osbar.org/surveys_research/snrtoc.html#economicsurveys (last visited October 30, 2012). This Court has stated that it intends to use the periodic publication of the OSB Survey as its "initial benchmark" as to the reasonableness of hourly rates requested before it. *See, e.g.*, "Message From The Court Regarding Attorney Fee Petitions" available from the Court's website. However, the Court has also stated that "Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors." *Id*. For a number a reasons, which I explain below, the Survey does not accurately reflect the enhanced rates to which the environmental litigation specialists involved in this case are entitled.

15.     First, the OSB Survey results do not accurately reflect the public records or environmental litigation practice specialty areas as an individual line item. These areas of practice differ significantly from general plaintiff's practice in state court. The OSB Survey instead folds its analysis of the very distinct practice of environmental litigation into the dissimilar areas of real estate and land use law. The survey also fails to reflect hourly rates in the combined plaintiff's practice and years of practice, which I consider to be the most significant benchmark such a survey might provide. The survey fails to address any aspect of the skill and standing of the lawyer, his or her reputation in the community, or indeed any of the most significant factors for consideration of the rate aspect of the lodestar calculation. These are factors which the Ninth Circuit has found to be central to the determination of the appropriate hourly rate as identified in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975)*, cert denied,* 425 U.S. 951 (1976), which have now been subsumed within the initial calculation. *Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir. 1988)*, cert* denied, 493 U.S. 1035 (1990). Subsumed factors include: (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel.

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

11

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

**16.** As noted above, the OSB Survey accounts only for the attorney's years of experience rather than important factors such as skill and reputation. Furthermore, the survey includes hourly rates for attorneys who are part-time due to lack of legal work. Inclusion of these attorneys in the survey results in an underestimation of the prevailing market rate for skilled full-time attorneys with good reputations. Based on my experience, attorneys lacking the skill and reputation to attract sufficient work at the prevailing rates will charge lower rates to obtain work. Given the bar survey's "lack of consideration for skill and reputation, it is of limited value in this case." *Miranda, v. City of Cornelius*, No. 04-CV-241-AA, Opinion and Order on Fee Petition, slip op. at 5–6 (D. Or., Mar. 8, 2006); *see also, Kunnert v. Baker County*, No. 02-0043-HA, Order at 4 (D. Or., dated January 7, 2005) (court awarded 1974 bar admittee hourly rate of $300, far exceeding applicable OSB Survey data); *Alliance For The Wild Rockies v. Allen,* No. 04-1813-JO, Opinion and Order on Fee Petition, slip op. at 4 (D. Or., Mar. 15, 2010) (awarding hourly rates higher than reflected in OSB Survey, without comment). Copies of the opinions attached hereto as Exhibits 1, 2 and 3, respectively.

**17.** As noted above, the focus of Plaintiff Counsels' litigation is so specialized that the OSB Survey does not recognize it as an independent practice area, instead lumping it together with land use and real estate practice. Indeed the relative paucity of environmental lawyers is underscored by the fact that the OSB did not receive enough responses from outside of an arc described by a radius of 60 miles from downtown Portland to generate useful data for an analysis of the hourly rates of "Real Estate/Land Use/Environmental Law" practitioners anywhere else in Oregon. *See, e.g.*, OSB Survey at 32 offering only "n/a" responses for the Lower Valley, Southern Oregon, Eastern Oregon and Oregon Coast areas covered by the Survey. The Survey employs the "n/a" response only when the Bar received fewer than five responses. *Id*. at 2. Generally, the rules

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

12

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

of economics suggest that the scarcity of a commodity is inversely proportional to its market value. This indicates to me that any of the OSB Survey's data the Court deems relevant to this case (as discussed below), should be adjusted significantly upward to reflect this tendency as it relates to my "niche" practice. I note that the OSB itself has recognized this dynamic in its 2008 "Litigation Memo" interpreting the OSB Survey. The Litigation Memo, attached hereto as Exhibit 4, notes that attorneys with a narrow and specifically indentified "niche" are often able to bill at premium price points. *Id*. at 2. Further, all other things being equal, areas of practice that involve substantial amounts of litigation activity tend to have higher hourly rates than those that do not. This is because litigation itself is an expertise distinct from the areas of substantive law and an attorney skilled in its practice is able to command a higher value in the legal market than one who lacks litigation experience. Public interest environmental litigation is a "litigation-intensive" practice type.

**18.**     Normally, when determining the prevailing market rate, the relevant community is generally defined as the forum in which the district court sits. This is long-settled precedent. "The Ninth Circuit has repeatedly held that the relevant legal community is considered to be that of the forum district." *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 317 (N.D. Cal. 1995) (citing *Gates v. Deukmejian,* 987 F.2d at 1405; *Davis v. Mason County,* 927 F.2d 1473, 1488 (9th Cir. 1991), *cert. denied,* 502 U.S. 899 (1991)). However, I am not aware of any attorneys practicing in the Medford legal community with a developed expertise litigating federal environmental cases. This conclusion is supported by the dearth of responses for the OSB Survey from "Real Estate/Land Use/Environmental Law" practitioners outside of Portland metropolitan area. Accordingly, I have determined that the proper "legal market" for evaluation of my reasonable hourly rates is the Eugene legal community where my practice is based.

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS      13
FEES, COSTS AND EXPENSES

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

**19.** The manner in which the OSB Survey commingles the data for the hourly rates of attorneys practicing in the functionally diverse areas of real estate, land use, and environmental law under one heading is problematic. For example, it is my experience—based on working for almost twenty-two years within the Oregon legal community and having ongoing and substantive interactions and communications with attorneys engaged in practice of real estate, land use and environmental law—that real estate practitioners generally do not engage in litigation. As noted above, areas of practice that involve substantial amounts of litigation activity tend to have higher hourly rates than those that do not. Additionally, the practice of real estate law frequently involves the use of generalized "boilerplate" forms in the processing of transactions which does not require the development of specialized skills on par with that required for the successful prosecution of environmental cases. Finally, there are vastly more attorneys engaged in the practice of real estate law than are working as environmental lawyers. Reference to the Yellow Pages or previous Bar Surveys indicate that the difference runs as high as a factor of six or seven; in some areas of the State, there are no environmental attorneys at all. Of those attorneys who do practice environmental law, the vast majority work either for industry or in governmental agencies; there are very, very few who do the kind of public interest work of the type represented in this case. This relative scarcity of public interest environmental attorneys serves to establish premium market rates.

**20.** For these reasons, based on my understanding of the applicable market rates in the Oregon legal community, it is my opinion that the market rate for real estate lawyers is substantially lower than the rate that could be commanded by equally experienced environmental litigators. Combining the two areas of practice in the Bar Survey serves to skew downward the data and to mask the hourly rates actually earned by environmental practitioners in Oregon.

**21.** Similarly, combining land use with environmental law is problematic. Although I agree that land use is an area of focus which is quite specialized, it also frequently does not require or involve litigation and therefore does not command the generally elevated hourly rates associated with a litigation-based area of practice. In my experience, much of the practice of land use law involves counseling clients in regard to regulatory requirements and producing and processing the various documents and materials associated with state land use permitting processes. Additionally, as noted in regard to real estate law above, there are many more attorneys engaged in the practice of land use law than are working as environmental lawyers. It appears that, as is the case for real estate lawyers versus environmental litigators, the difference runs as high as a factor of six or seven. As noted above, this relative scarcity of public interest environmental attorneys serves to establish premium market rates.

**22.** For these reasons, based on my understanding of the applicable market rates in the Oregon legal community, it is my opinion that the market rate for land use lawyers is substantially lower than the rate that could be commanded by equally experienced environmental attorneys. Again, combining these two areas of practice in the Bar Survey serves to skew downward the data and to mask the hourly rates applicable to environmental practitioners in Oregon.

**23.** For the reasons set forth above — and most importantly because the OSB Survey does not provide any specific data for practitioners with specialized environmental law litigation expertise in the Eugene legal market, *see* Survey at 32 — the OSB Survey does not establish any billing information relevant to my work in this case.

**24.** More recently, last November, in *Chevron Corporation v. Marla Aguinda Salazar,* Civ. No. 11-0691-LAK, Magistrate Coffin awarded an hourly rate of $450 in the Eugene legal market. *See, e.g.* Declaration Charles Tebbutt filed herewith as Exhibit 5 at ¶ 8. Mr. Tebbutt, the

attorney for which the fees were sought, had 23 years of litigation experience at that time, one more year than do I.

25. I have also attached a declaration filed in support of a fee petition in the Waldo Lake motorized use litigation in the Eugene Division of the District of Oregon, *Stewart v United States of America, et al.*, 07-6282-TC (D. Or.). Exhibit 6, attached hereto. That declaration, filed in 2009, provides evidence of normal hourly rates for attorneys David Bartz and Carson Bowler of $475 and $350, respectively. *Id* at ¶ 3. At that time, both worked at Schwabe Williamson & Wyatt PC. Mr. Bartz has a 1982 bar number whereas Mr. Bowler's number shows he joined the Oregon Bar in 1995. *Id*. At the time they submitted their fee declaration, Mr. Bartz and Mr. Bowler had 27 and 14 years of legal experience, respectively. For the public-interest purposes of that case, they agreed to represent their client in the Eugene litigation at the "reduced rate ($332 for Mr. Bartz), [and] ($240 for Mr. Bowler)." *Id*. Their general billing rates and attorney Bartz's rate claimed in the Eugene legal market three years ago compare favorably with the compensation I seek in this case.

26. Because of my unique focus on public interest environmental litigation, I believe that my practice area is a "niche" field as described in the 2008 OSB Litigation Memo attached hereto as Exhibit 4. In its Memo, the OSB observed:

> For example, many large law firms have attorneys that specialize in a specific niche (such as IP law or UCC/Commercial), which allows them to charge a higher rate. These niche attorneys aren't limited to large firms, however, and many charge just as much working for smaller firms. Thus the niche, not the firm, might dictate the hourly rate.

*Id*. at 2.

27. Upon consideration of the foregoing information, and in consultation with co-counsel, I have concluded that the following hourly rates are reasonable for my work in this case:

OF PLAINTIFF'S MOTION FOR ATTORNEYS    16
FEES, COSTS AND EXPENSES

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

$380 for work performed in 2011 and $390 for 2012. This contention is supported by the declarations of co-counsel filed herewith.

**TIME EXPENDED**

**28.** I have personally and contemporaneously maintained daily time slips for all of the time I have expended on this case. These time slips were then entered into my office's computerized billing program which has produced the data that is reflected in the TimeSlips printout attached hereto as Plaintiff's Exhibit 7. I have reviewed this document and believe it accurately represents the time I have spent in the prosecution of this case. I have reviewed each billing entry submitted in this matter and in an exercise of billing judgment, have deleted from the requested reimbursement those charges which we would not bill to my clients in the regular course of my legal services billing process, or which I found to be duplicative, or otherwise non-productive legal services. Additionally, as explained below, I have very aggressively discounted otherwise reasonably expended time based on the unusual staffing situation presented in this matter.

**29.** This case was unique in that one of the lead counsel, Ralph Bloemers, was scheduled to take time away from his office for personal leave squarely in the initial months of the case in the spring and early summer of 2011. Accordingly, I was retained to help bridge that scheduling gap with an attorney experienced in federal litigation during the early and middle phases of the case. Unfortunately, Mr. Bean's contentious avoidance of the obligations of a federal defendant required that I expend significantly more time during that period than I had anticipated would have been required had an Officer of the Court been opposing counsel. To provide continuity to the overall litigation effort, I remained on the case after Mr. Bloemers' return. Regardless, because Mr. Bloemers and Ms. Johnson are eminently capable attorneys, I have decided to use my professional judgment to aggressively discount the otherwise reasonably expended time that I

incurred after Mr. Bloemers returned from his personal leave in July of 2011.

30. Specifically, I have reviewed the time records and have used my judgment to excluded 31.90 hours of duplicative or nonproductive time or time expended on unsuccessful claims — valued at over $12,200.00 — for which I do not feel that I could fairly bill a retained client. *See, e.g.*, Exhibit 7 at 14. This is almost two-thirds of the amount, $19,701.00, for which I seek compensation for my work. *Id*.

31. In the prosecution of this matter, Counsel took steps to minimize the fees associated with this litigation by delegating, wherever appropriate, tasks to paralegals and law clerks. Through the delegation of appropriate work to paralegals and clerks with lower hourly rates, our clients' legal work is completed more efficiently and economically, thereby significantly reducing the total legal fees and costs associated with prosecuting a case.

32. Plaintiff's Counsel humbly contends that attorneys of lesser specialized training and experience would have expended more time in the prosecution of this case that the amount at issue herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Respectfully declared and submitted for the Court's consideration, this date, November 20, 2012.

/s/ David Bahr
David A. Bahr (Oregon Bar No. 90199)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439
davebahr@mindspring.com

DECLARATION OF DAVID BAHR IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS
FEES, COSTS AND EXPENSES

18

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439

# CERTIFICATE OF SERVICE

I certify that on November 20, 2012, I sent Plaintiff's Declaration of David Bahr in Support of Motion For Attorney Fees, Costs and Expenses to the Defendant by electronic mail to the email address listed below and that I will send a hard copy via certified mail return receipt requested on November 21, 2012 to the address listed below:

Donald Bean
P.O. Box 60
Gold Hill, OR 97525
(541) 951-4181
redcloudmine@yahoo.com

Respectfully submitted,

/s/ Ralph O. Bloemers
Ralph O. Bloemers, OSB No. 984172
Crag Law Center