IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ROGUE RIVERKEEPER, A PROJECT OF, THE KLAMATH SISKIYOU WILDLANDS CENTER, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DONALD BEAN, individually,<br><br>Defendant. | Case No. 1:11-cv-3013-CL<br><br><br><br>REPORT & RECOMMENDATION |

CLARKE, Magistrate Judge.

Plaintiff Rogue Riverkeeper, a Project of the Klamath Siskiyou Wildlands Center ("plaintiff") filed this action against Donald Bean ("defendant") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 ("Clean Water Act"), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), seeking a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney fees. This court has jurisdiction pursuant to 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331. Default as to defendant was ordered on July 24, 2012 (#63). Plaintiff has now filed a motion for default judgment (#72), and is prepared to submit a proposed order for default and judgment. For the

reasons stated below, the court recommends that plaintiff's motion for default judgment be granted and default judgment entered as requested.

## LEGAL STANDARDS

The decision to grant or deny a motion for default judgment is within the discretion of the court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). In exercising its discretion, the court must consider seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon entry of default, plaintiff's well-pleaded allegations of fact regarding liability, except allegations relating to the amount of damages, will be taken as true. Geddes v. United Fin-Group, 559 F.2d 557, 560 (9th Cir. 1978). Plaintiff must establish damages by proof, unless the amount is liquidated or otherwise susceptible of computation. Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (internal citation omitted).

## DISCUSSION

### I. Motion for Default Judgment.

The following was established by entry of default of defendant: defendant owns an industrial mining operation known as the Reelfoot Placer mine in Josephine County, Oregon. Defendant's mine is located on public lands managed by the U.S. Department of the Interior, Medford District of the Bureau of Land Management, and sits alongside Sucker Creek, a tributary of the East Fork of the Illinois River which feeds into the Rogue River. Sucker Creek is

a major producer of a variety of salmon and is designated critical habitat for the federally threatened wild coho salmon.

In 1997, a large flood caused Sucker Creek to change its course in several reaches, including the area of the Reelfoot Placer mine. Sucker Creek's former channel near the mine changed course to become a seasonal spring-fed side channel, supporting juvenile rearing of coho salmon and steelhead trout. Prior to defendant's mining activities, the mainstem Sucker Creek flowed into the spring-fed side channel seasonally and during storm events.

Since at least July 15, 2010, as part of his mining operation, defendant has discharged stormwater, wastewater, and dredged or fill material in or near the side channel of Sucker Creek and one of Sucker Creek's floodplains without required permits. Defendant's activities are described in detail in plaintiff's complaint and its memorandum in support of its motion for default judgment. As a summary, defendant has (1) dredged or excavated alluvium from the inlet of the side channel to create two 165-feet long and 60-feet wide mining pits in the side channel; (2) built a 250-foot long, 8- to 15-foot high berm at the southern end of the two mining pits to prevent winter flows from entering the mining pits; (3) constructed a road through the side channel in a wetland area used by fish from Sucker Creek as a spawning and rearing habitat; (4) placed fill in the mainstem of Sucker Creek to create a wet-water roadway across the creek; (5) constructed a 35-foot long and 4-foot high earthen dam across the side channel at the northern, downstream end of the mining pit, using excavated alluvium; and (6) placed a PVC pipe in the dam, discharging water from the mining pit into the side channel of Sucker Creek.

Defendant's activities are in violation of the Clean Water Act. The Clean Water Act was enacted by Congress to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve this objective Congress outlawed

the unauthorized "discharge of any pollutant by any person" without a valid permit issued pursuant to Sections 402 and 404 of the Clean Water Act. 33 U.S.C. § 1311(a). Here, defendant has not obtained a National Pollutant Discharge Elimination System ("NPDES") permit under section 402 of the Clean Water Act, 33 U.S.C. § 1342, for discharging pollutants from his mine site, or a proper permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, for placing dredged or fill material into waters of the United States.

Defendant's activities cause significant environmental harm. During seasonal high flows and flood events, water from Sucker Creek flows into the mining pits, overtops the dam, and spills into the side channel, causing polluted water from the side channel to flow into Sucker Creek's mainstem. Fish entering the mining pits during periods of high flow are trapped in the pits when the water level lowers. Defendant's continued excavation and construction has also degraded spawning and rearing habitat for coho salmon.

In response to defendant's actions, plaintiff brought this case under the citizen suit provision of the Clean Water Act, 33 U.S.C. 1365.[1] Pursuant to 33 U.S.C. § 1365(b)(1)(A), plaintiff notified defendant more than sixty days before filing its complaint of his alleged Clean Water Act violations for (1) discharging dredged or fill material into the waters of the United States without a valid permit, and (2) discharging industrial stormwater without a NPDES permits.

Plaintiff filed its complaint on February 9, 2011 (#1). Defendant did not file an answer. During a telephonic status conference on September 26, 2011, the court ordered defendant to file an answer by October 11, 2011, and warned defendant that failure to do so could result in entry of default (#35, 46). Defendant did not file an answer, and on October 27, 2011, the court

---

[1] While plaintiff's complaint included claims for violation of RCRA as well as the Clean Water Act, plaintiff only pursues claims against defendant for violations of the Clean Water Act in its motion for default judgment.

ordered defendant to show cause as to why default should not be entered (#46). Defendant failed to do so, and the court clerk entered default on July 30, 2012 (#63).

## II.   Injunctive Relief.

Plaintiff requests injunctive relief against defendant, permanently enjoining defendant from all earthmoving and mining-related activity until he complies with the Clean Water Act. Plaintiff also seeks an order that defendant restore the site to its pre-discharge, pre-mining condition by (1) removing the berm, dam, and material used to create the two roadways; (2) use material from the berm, dam, and other rock piles to fill the mining pits and any other excavated areas at the site; (3) restore the two wetland areas damaged and/or destroyed by defendant's discharges; and (4) where appropriate, order defendant to revegetate and resoil areas of the site damaged by defendant's discharges.

The Clean Water Act authorizes district courts "to order that relief it considers necessary to secure prompt compliance with the Act. That relief can include, but is not limited to, an order of immediate cessation." Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982). Injunctive relief is warranted when plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto v. Geerston Seed, 130 S. Ct. 2743, 2756 (2010) (citing eBay Inc. v. MercExchange, L.L.C., 437 U.S. 388, 391 (2006)). Generally, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages." Amoco Prod. Co. v. Vill. of Gamble, 480 U.S. 531, 545 (1987). "[I]f environmental injury is sufficiently likely, the

balance of harms will usually favor the issuance of an injunction to protect the environment." Sierra Club v. Bosworth, 510 F.3d 1016, 1033 (9th Cir. 2007).

In this case, plaintiff has established that defendant's ongoing discharges continue to degrade critical fish habitat, monetary damages do not provide an adequate remedy, the balance of hardships weighs in favor of granting injunctive relief, and that such relief protects the environment. Accordingly, the court recommends that plaintiff's request for injunctive relief be GRANTED.

### III.  Penalties Under the Clean Water Act.

Plaintiff seeks $96,150 in penalties against defendant, payable to a fund established by the court and applied towards a supplemental environmental project. Set at a rate designed to deter violations, the Clean Water Act requires a violator to pay a penalty of up to $37,500 per violation for all violations pursuant to Sections 309(d). 33 U.S.C. § 1319(d). When awarding civil penalties under Section 309(d), "the court considers (1) the seriousness of the violation or violations, (2) the economic benefit (if any) resulting from the violation, (3) any history of such violations, (4) any good-faith efforts to comply with the applicable requirements, (5) the economic impact of the penalty on the violator, and (6) such other matters as justice may require." Id.

Between July 15, 2010, and defendant's default, defendant had accrued at least 2,654 violations. Plaintiff seeks a penalty of $96,150, equal to approximately 1/1000 of the maximum penalty, or $37.50 per violation. Considering that defendant's discharges have adversely affected critical habitat for coho salmon, that defendant received some economic benefit from his violations (either by producing a profit at his mine, or, at a minimum, not paying for required permits), the two-year period in which defendant has continuously violated the Clean Water Act,

and defendant's failure to bring his operations into compliance with the Act, $96,150 is an appropriate penalty. The court agrees with plaintiff that "[t]he per-day cost of each violation captures the relative severity of the environmental injury caused be Defendant's discharges, as well as the history of Defendant's violations and his failure to comply with the Clean Water Act despite having multiple opportunities to do so." Pltf. Memo in Supp. of Mot. For Def. Judg., p. 41. The court recommends that plaintiff's request for $96,150 in penalties be GRANTED.

## IV. Attorneys' Fees and Costs.

Plaintiff also seeks attorneys' fees in the amount of $81,396.50 and costs and expenses in the amount of $429.36. Section 505(d) of the Clean Water Act allows attorney fee awards when the party requesting the fees is the prevailing or substantially prevailing party and the request is appropriate. 33 U.S.C. § 1365(d); Resurrection Bay Conservation Alliance v. City of Seward, 640 F.3d 1087, 1091 (9th Cir. 2011) (citing Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist., 574 F.3d 1054, 1058-1063 (9th Cir. 2009). Generally, fee awards "should be the rule rather than the exception." Saint John's, 574 F.3d at 1062. Under Local Rule 54-2, costs shall be taxed in accordance with Federal Rule of Civil Procedure 54(d), which provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d).

Plaintiff's request for attorney fees is based on 51.7 hours at $380 per hour in 2011 and $390 per hour for 2012 for David Bahr's work; 101.4 hours at $225 per hour for 2010 and 2011, and $250 per hour for 2012 for Courtney Johnson's work; and 103 hours at $345 per hour in 2010, $360 per hour in 2011, and $375 per hour in 2012 for Ralph Bloemer's work. Plaintiff also includes 31.1 hours at $135 per hour for the work of paralegal Megan Hooker; and 172.9 hours at $125 per hour for the work of paralegal Andrew Mulkey. After making an across-the-

board reduction of 15%, plaintiff requests $81,396.50 as fees, and $429.36 in costs and expenses. These charges are itemized in exhibits attached to the declarations of David Bahr, Courtney Johnson, and Ralph Bloemers in support of the motion for default judgment.

After a careful review of plaintiff's declarations and exhibits, the court finds that the hours charged in this case are reasonable.[2] Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The court also finds that billing rates charged are reasonable for the legal community and the experience of counsel's firm. Bell v. Clackamas Cnty, 341 F.3d 858, 868 (9th Cir. 2003); Schwarz v. Sec'y Health & Human Services, 73 F.3d 895, 906 (1995). Accordingly, this court recommends that plaintiff be awarded attorneys' fees in the amount of $81,396.50 and costs and expenses in the amount of $429.36.

## RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (#72) against defendant be granted;

2. Plaintiff be awarded attorneys' fees in the amount of $81,396.50 and costs and expenses in the amount of $429.36;

3. Plaintiff be granted an injunction requiring defendant to cease from all earthmoving and mining-related activity until defendant complies with the Clean Water Act;

4. Plaintiff be granted an injunction requiring defendant to restore the Reelfoot Placer mine to its pre-discharge, pre-mining condition by (1) removing the berm, dam, and material used to create the two roadways; (2) use material from the berm, dam, and other rock piles to fill the mining pits and any other excavated areas at the site; (3) restore the two wetland areas damaged and/or destroyed by defendant's discharges;

---

[2] While the number of hours in this case is significant, the court notes that defendant caused considerable delay by failing to confer with plaintiff, filing numerous "notices" with the court, and filing multiple appeals of the court's interlocutory orders.

Page 8 – REPORT AND RECOMMENDATION

and (4) where appropriate, revegetate and resoil areas of the site damaged by defendant's discharges;

5. Plaintiff's claims under RCRA be dismissed without prejudice; and
6. The Clerk of Court be directed to close this case.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any response to the objections is due fourteen (14) days from the date of the objections.*** See FED. R. CIV. P. 72, 6.

DATED this ___23___ day of January, 2013.

_____
MARK D. CLARKE
United States Magistrate Judge